UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DAMIAN HALL,<br><br>               Petitioner,<br>v.<br><br>MR. BACA, et al.,<br><br>               Respondents. | Case No. 3:14-cv-00613-RCJ-WGC<br><br>ORDER |

Damian Hall's counseled, first-amended habeas petition under 28 U.S.C. § 2254 is before the court for disposition on the merits (ECF No. 10).

## I.    Procedural History and Background

As this court set forth previously, on February 3, 2010, the State charged Hall by way of criminal complaint with four counts of sexual assault with the use of a deadly weapon, one count of battery with intent to commit sexual assault, one count of battery with a deadly weapon, one count of domestic battery causing substantial bodily harm, one count of assault with a deadly weapon, and one count of false imprisonment (exhibit 2).[1]  After his jury trial had commenced, Hall entered a guilty plea to count 2: sexual assault with the use of a deadly weapon and count 6:  battery with a deadly weapon.  Exhs. 26, 27.  The state district court sentenced him as follows:  count 2 – life with the possibility of parole after ten years, with a consecutive term of 96 to 240 months for the deadly weapon enhancement; and count 6 -  48 to 120 months,

---

[1] Unless otherwise noted, exhibits referenced in this order are exhibits to the first-amended petition, ECF No. 10, and are found at ECF Nos. 11-12.

1

consecutive to count 2. Exh. 34. Judgment of conviction was entered on April 25, 2011. Exh. 35. The Nevada Supreme Court affirmed Hall's conviction on January 12, 2012, and remittitur issued on February 6, 2012. Exhs. 42, 43.

Hall filed a *pro per* state postconviction petition for habeas corpus on March 2, 2012. Exh. 46. The state district court appointed counsel, and Hall filed a supplemental petition. Exh. 50. The Nevada Supreme Court affirmed the denial of the petition on June 12, 2014, and remittitur issued on July 9, 2014. Exh. 63.

Hall does not indicate on his federal habeas petition the date on which he dispatched it for filing, but he signed the petition on September 28, 2014 (ECF No. 5). This court appointed counsel, and Hall filed an amended petition on July 8, 2015 (ECF No. 10). Respondents have now answered the petition, and Hall has replied (ECF Nos. 26, 29).

II. **Legal Standards**

    a. **Antiterrorism and Effective Death Penalty Act (AEDPA)**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is

2

no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual

3

determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181. Finally, in conducting an AEDPA analysis, this court looks to the last reasoned state-court decision. *Murray v. Schriro*, 745 F.3d 984, 996 (9th Cir. 2014).

A state prisoner is entitled to federal habeas relief only if he is being held in custody in violation of the constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). Unless an issue of federal constitutional or statutory law is implicated by the facts presented, the claim is not cognizable under federal habeas corpus. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A petitioner may not transform a state-law issue into a federal one merely by asserting a violation of due process. *Langford v. Day*, 110 F.3d 1380, 1381 (9th Cir. 1996). Alleged errors in the interpretation or application of state law do not warrant habeas relief. *Hubbart v. Knapp*, 379 F.3d 773, 779-80 (9th Cir. 2004).

### III. Instant Petition

**Grounds 1 & 2**

Hall asserts in ground 1 that because he was incompetent he did not enter his guilty plea voluntarily, intelligently or knowingly, and the district court improperly refused to grant his motion to withdraw his guilty plea, in violation of his Fifth, Sixth, and Fourteenth Amendment rights (ECF No. 10, pp. 11-19). In ground 2, Hall contends that the trial court deprived him of his right to effective and conflict-free counsel when it refused to appoint conflict-free counsel to litigate the motion to withdraw his guilty plea, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. *Id.* at 19-21.

A guilty plea must be made knowingly, voluntarily and intelligently; such inquiry focuses on whether the defendant was aware of the direct consequences of his plea. *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *see also Brady v. U.S.*, 397 U.S. 742, 748 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."). A criminal defendant may not plead guilty unless he does so competently and intelligently. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). The competency standard for pleading guilty is the same as the competency standard for standing trial. *Id.* at 397. As long as a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . has a rational as well as factual understanding of the proceedings against him," he is competent to plead guilty. *Dusky v. U.S.*, 362 U.S. 402 (1960); *see also Godinez*, 509 U.S. at 399.

The Sixth Amendment right to counsel encompasses a right to representation free from conflicts of interest. *Lewis v. Mayle*, 391 F.3d 989, 995 (9th Cir.2004). With respect to a breakdown in the attorney-client relationship, the Supreme Court has made it clear that the Sixth Amendment guarantee of counsel does not guarantee a meaningful attorney-client relationship. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

Here, the state-court record reflects that on February 18, 2010, the justice court entered an order directing that two psychiatric medical professionals conduct evaluations of Hall to determine whether he was competent to assist in his own defense. Exh. 3. Both evaluators concluded that Hall understood the nature of the criminal charges against him, the nature and purpose of the court proceedings, and was able to assist in his defense with a reasonable degree of rational understanding. Exhs. 4, 5. Both reports indicated that Hall had a history of mental illness, including schizophrenia and auditory hallucinations. *Id.* The court reviewed the reports and entered a finding that Hall was competent to proceed. Exh. 6.

Hall's jury trial commenced on February 28, 2011. Exh. 23. Hall's wife testified in detail that over a period of several hours on the night in question, Hall kicked her and beat her with a wooden dowel, causing her head to bleed profusely and breaking ribs, threatened her with a knife, and repeatedly raped her until she was able to flee after he fell asleep. Exh. 23, pp. 23-122. The State introduced numerous photos taken at the hospital of Hall's wife's injuries. *See* exh. 24, pp. 54-263.

Police officer Dan Snow testified as to the statement that Hall's wife made to him when he arrived at the scene Exh. 24, pp. 171-232. His testimony regarding Hall's wife's description of events was substantially similar to the wife's testimony.

On the fourth day of trial, Hall entered into a guilty plea. Exh. 26. At the outset of the plea canvass, the state district court advised Hall that it wanted to be "completely confident that before you made this decision you've had ample opportunity to confer with your counsel and explore all factual and legal issues in the case." *Id.* at 4-5. Hall answered in the affirmative as to whether he was entering a guilty plea voluntarily and had had ample opportunity to review and discuss all discovery and trial tactics with counsel. *Id.* at 5. Hall indicated that he was satisfied with counsel's representation and did not need additional time to consult with her for any reason. *Id.* Hall was read the two counts to which he pled guilty; Hall stated that he was in fact guilty of the charged

6

acts. The court reviewed in detail the possible sentences with Hall, and he indicated that he understood. *Id.* at 6-15.

Hall either filed or submitted a *pro per* motion to withdraw guilty plea and to appoint conflict-free counsel, and on July 20, 2011, the state district court held a hearing on the motion. Exh. 30. Hall argued that he had not had enough time to contemplate his decision before entering the plea. The court went through the transcript of the plea canvass with Hall. Hall stated that he did not tell the court he needed more time to decide during the canvass because his counsel told him it was "now or never." *Id.* at 8. Hall further informed the court that he wanted new counsel appointed "to have people look at my case again." *Id.* at 9. The court denied the motion for new counsel and denied the motion to withdraw guilty plea as belied by the record. *Id.* at 9.

The Nevada Supreme Court held that the district court did not abuse its discretion in denying the motions. Exh. 42. The state supreme court rejected Hall's contention that his plea decision was overly rushed, noting that the district court thoroughly canvassed Hall and asked him three times if he needed additional time, with Hall responding in the negative. *Id.*

Hall has failed to show that the Nevada Supreme Court's determinations on federal grounds 1 or 2 were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, grounds 1 and 2 are denied.

**Grounds 3 & 4**

Hall argues that the trial court violated his Fifth, Sixth, and Fourteenth Amendment due process rights when it refused to evaluate his competency before sentencing (ground 3) and sentenced him while he was incompetent (ground 4) (ECF No. 10, pp. 21-24).

7

At sentencing, Hall's counsel informed the court that she had "severe" concerns about his competency and believed that Hall's mental health had deteriorated since his entry of the guilty plea. Exh. 34, pp. 4-5. She stated that she had had no concern regarding competency at the time Hall pleaded guilty on March 3, 2001. However, at the April 22, 2011 sentencing, counsel said Hall's understanding of the proceedings appeared to be diminished; for example, Hall told her that the Nevada Supreme Court was considering his appeal, even though he had not yet been sentenced. She also noted that she received the presentence investigation report late and had not had time to review it. The court questioned Hall about his entry of his plea and the several filings he had lodged with the court. *Id.* at 12-14. Hall stated that while they were in his handwriting, another inmate had helped him prepare the documents, and he did not fully understand them. Hall did not recall the other inmate's name, but subsequently stated that his first name was Gene. The court—noting that filing a premature notice of appeal was not in and of itself indicative of incompetency—found Hall's testimony not credible, indicated that it would proceed with sentencing at that time, and called a brief recess in order that Hall and his counsel could review the PSI. *Id.* at 14.

When the sentencing hearing resumed, the court stated that during the recess it had reviewed the two competency evaluations conducted in January, 2007, and noted that both concluded that Hall was competent to understand the nature of the proceedings and to assist counsel. *Id.* at 21-22.

Affirming the convictions, the Nevada Supreme Court reasoned:

> Here, defense counsel expressed concerns about Hall's competency. In response, the district court reviewed prior competency reports, the plea canvass, and proper person court filings. We conclude that the district court did not abuse its discretion by failing to order a competency hearing because the district court had no reasonable doubt regarding Hall's competency.

Exh. 42, p. 3.

8

Hall has not demonstrated that the Nevada Supreme Court's determinations on federal grounds 3 or 4 were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Grounds 3 and 4 are, therefore, denied.

The petition is thus denied in its entirety.

### IV. Certificate of Appealability

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Hall's petition, the court finds that reasonable jurists would not find its determination of any grounds to be debatable pursuant to S*lack*. The court therefore declines to issue a certificate of appealability.

### V. **Conclusion**

**IT IS THEREFORE ORDERED** that the amended petition (ECF No. 10) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: This 6th day of November, 2018.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE